UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

M/V LITTLE KELLY, LLC, ET AL.                                CIVIL ACTION

VERSUS                                                       NO: 10-1203

BURLINGTON RESOURCES                                         SECTION: "C" (5)
OIL & GAS COMPANY, LP, ET AL.

## ORDER AND REASONS[1]

Before the Court is Defendant Safety First, L.L.C.'s ("Safety First") Motion for Partial Summary Judgment. (Rec. Doc. 35). Defendants ConocoPhillips Company ("COP") and Burlington Resources Oil & Gas Company, LP ("Burlington") (together, "Cross Claimaints") oppose the motion. (Rec. Doc. 35). Having reviewed the record, motions of counsel, and the law, the motion is GRANTED for the following reasons.

## I. Background

The underlying lawsuit in this case concerns a vessel's allision with an unlit well structure in Callilou Bay, Terbonne Parish, Louisiana. (Rec. Doc. 35-1 at 2). On the night of April 26, 2009, Plaintiffs' shrimping vessel, the M/V LITTLE KELLY, allided with Well Structure 5D ("Structure") and sank. (Rec. Doc. 1 at 4); (Rec. Doc. 38 at 3). At all times, Burlington was the owner and operator of the Structure. (Rec. Doc. 23 at 2). However, pursuant to a Master Service Agreement ("MSA"), Safety First had a contractual duty to perform quarterly inspections of and make any necessary repairs to the Structure in question. (Rec. Doc. 38-1 at 4). Evidently, Safety First conducted an inspection of the Structure on March 11, 2009, during which it changed the battery that powered the Structure. (Rec. Doc. 38 at 3). On April

---

[1] Sami Dudar, a third-year law student at the University of Georgia School of Law, assisted in the drafting of this order.

27 and 28, 2009, COP inspected the Structure, finding corrosion to the positive battery terminal, which, it alleges, resulted in poor battery performance. (Rec. Doc. 38 at 4-5).

Plaintiffs filed this lawsuit against Defendants on April 26, 2010, alleging that their vessel allided with the Structure because it was unlit due to Defendants' negligent maintenance. (Rec. Doc. 1 at 5). On December 17, 2010, Defendants Burlington and COP filed cross claims against Defendant Safety First pursuant to Federal Rule of Civil Procedure 13. (Rec. Doc. 23). These cross claims allege the following: (1) under the MSA, Cross Claimants are entitled to defense and indemnity against Plaintiffs' claims from Safety First, Rec. Doc. 23 at 4; (2) Cross Claimants are similarly entitled to insurance coverage and defense from Plaintiff's claims, *id*. at 8; (3) Safety First's negligent inspection and maintenance of the Structure constituted a breach of warranty under the MSA, *id*.; (4) Cross Claimants are entitled to fees and costs under the MSA for Safety First's material breaches of the contract; and (5) Cross Claimants are entitled to tort-based contribution from Safety First, *id*. at 11. On May 24, 2011, Safety First moved for partial summary judgment with respect to Cross Claimants' entitlement to contractual defense, indemnity, and insurance, arguing that no such duties exist in this case. (Rec. Doc. 35).

## II. Law and Analysis

**A. Standard of Review**

Summary judgment is proper where neither the pleadings nor the evidence demonstrate the existence of a genuine issue of material fact, entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). The substantive law determines a fact's materiality. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden "of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact."  *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

After the movant has carried its initial burden, the burden shifts to the nonmovant to point out such evidence in the record that establishes the existence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24; *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998).  This burden entails "more than simply show[ing] . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather the nonmovant has the burden of putting forth evidence that would support a finding of the material factual issue in its favor. *Anderson*, 477 U.S. at 249.

In its summary judgment analysis, a court is to consider all of the evidence in a light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  A court will resolve factual controversies in favor of the nonmovant, "but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  A court will consider neither conclusory allegations nor unsubstantiated assertions in assessing whether the nonmovant's burden is satisfied.  *Id.*; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the nonmovant fails to show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Herrera,* 862 F.2d at 1157.

**B. Contractual Defense and Indemnity Claims**

    1. Scope of Defense and Indemnity Provision

This Court must first determine the scope of the defense and indemnity provision at issue in order to determine whether the provision is triggered. Although Safety First addresses four indemnity Articles in the MSA, Rec. Doc. 40-3 at 2, only Section III, Article 6.1 is applicable to the present case.[2] This Article reads as follows:

> 6.1. [Safety First] shall comply, and ensure that the other members of [Safety First] shall comply, with all Federal, State and local laws, rules and regulations applicable to work performed hereunder. Subject to Section III, Article 10, Risk Structure, [Safety First] shall indemnify, defend and hold Company Group[3] harmless from any fine, penalty or liability, and for costs related thereto, including, without limitation, court costs and attorney's fees, arising out of any failure by [Safety First] to comply with any law, rule or regulation.

(Rec. Doc. 35-5 at 11).

---

[2] Cross Claimants do not contest that Section III, Articles 10.1 and 10.2 of the MSA–pertaining to claims made by any member of the Cross Claimants or damage or loss to Cross Claimants' property–are not applicable to this motion. (Rec. Doc. 38 at 8); *see* (Rec. Doc. 35-5 at 13) (contract provisions). Furthermore, Section III, Article 6.5 provides indemnification for Safety First's compliance with "all Federal, State, and local environmental laws and regulations" also not at issue. (Rec. Doc. 35-5 at 11).

[3] Sec. III, Art. 10.10.1 defines "Company Group" as "(a) Company; (b) Company's Affiliates and coventurers, and Affiliates of such coventurers; (c) any subsequent assignees of the rights and obligations of any of the foregoing relating to the area of operations; (d) Company's other contractors (other than Contractor) and their subcontractors, and Affiliates of either, that are engaged to provide goods or services for, or are otherwise involved in, the project for which the work is provided . . . ." (Rec. Doc. 35-5 at 15). No party disputes that this definition includes COP and Burlington.

4

The parties do not contest that federal maritime law governs this dispute.[4] Under maritime law, a court is to construe an indemnity contract "to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties . . . ." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). However, this does not mean that a court should interpret an indemnity contract "to impose liability for those losses or liabilities which are neither expressly within" the terms of the contract, "nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Id*. Rather, a court should interpret the agreement "as a whole," giving "their words . . . their plain meaning unless the provision is ambiguous." *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984).

*Sumrall v. Ensco Offshore Co.*, 291 F.3d 316 (5th Cir. 2002), is instructive in the interpretation of the indemnity provision at issue here. There, the court juxtaposed the indemnity clause in that case[5] with the one in *Corbitt*.[6] The court "declined to interpret the phrase 'all claims' in the *Corbitt* provision to include . . . contractual obligations," noting that the

---

[4] Section III, Article 5.1 of the operative MSA agreement further states that "the interpretation and performance of this agreement and each contract hereunder shall be governed by and construed in accordance with the general maritime law of the United States" where work is performed offshore, as is the case here. (Rec. Doc. 35-5 at 11). Furthermore, since federal maritime law applies, this Court rejects Cross Claimants' argument that this Court should, pursuant to Louisiana law, await the outcome of the underlying lawsuit to determine the applicability of the indemnity provision. (Rec. Doc. 38 at 7).

[5] The provision read, in pertinent part, "[Indemnitor] agrees to protect, defend, indemnify, hold and save [Indemnitee] and its . . . employees . . . contractors and subcontractors, and all their . . . employees . . . harmless from and against all claims . . . and causes of action of whatsoever nature or character . . . and whether arising out of contract, tort . . . due to . . . any cause whatsoever . . . whether or not caused by . . . breach of contract, or legal duty of [Indemnitee] or any other party indemnified hereunder . . . ." *Sumrall*, 291 at 319 n.4.

[6] The *Corbitt* clause read as follows: "Contractor . . . shall indemnify [Indemnitee] against all claims, suits, liabilities and expenses on account of injury or death of persons . . . arising out of or in connection with performance of this [contract] . . . ." 654 F.2d at 331.

5

contract "'must clearly express such a purpose.'" *Id*. at 319 (quoting *Corbitt*, 654 F.2d at 334). However, the court found that the expansive language, coupled with the express enumeration of indemnified claims–including breach of contract–made the *Sumrall* indemnity clause broader than the scope of *Corbitt*, justifying the inclusion of breach of contract claims within indemnity provision. *Id*. at 320.

This Court finds Safety First's indemnity provision more closely to resemble *Corbitt* than *Sumrall*. Unlike *Sumrall*'s expansive language, "causes of action of whatsoever nature or character," and express mention of particular claims, the MSA compares with *Corbitt*'s "all claims" language by stating that Safety First will indemnify Cross Claimants for "any . . . liability . . . arising out of any failure by [Safety First] to comply with any law, rule or regulation." (Rec. Doc. 35-5 at 11). The provision does not expressly mention that the breach of contractual obligations will trigger the right to defense and indemnity, or any specific causes of action for that matter. By contrast, in Article III, Sections 6.2 and 6.5, Safety First agrees to comply with specific employment and environmental laws that are not at issue in this motion. *Id*. This further suggests that the parties contemplated specific causes of action that could have broadened the scope of Article 6.1, but deliberately did not include them, such as breach of contractual duties.

Cross Claimants argue that there is language within Article 6.1 that justifies a liberal interpretation of the indemnity provision. Specifically, Cross Claimants reference the clause that subjects Article 6.1 to Article 10 that expressly indicates that indemnification provisions are to be applied liberally. (Rec. Doc. 38 at 13-14). Read in full, Section III, Article 10.8 states that, "Except and to the extent expressly provided otherwise *in this Article 10*, any indemnification, defense and/or release *in this Article 10* is to be liberally construed . . . ." (Rec. Doc. 35-5 at 14)

(emphasis added).  Thus a liberal interpretation of Article 6.1 based on Article 10 is not warranted because only Article 10 is to be liberally construed.  Therefore, the plain meaning of the indemnity provision's scope is limited to violations of Federal and State laws and regulations that govern Safety First's quarterly inspections of the Structure, excluding breach of contract obligations.

    2.  Enforcing the Defense and Indemnity Provision

Having ascertained the proper scope of Section III, Article 6.1, this Court must determine whether there is no genuine issue of material fact as to whether the facts of this case trigger the defense and indemnity provision.  Safety First argues that, because neither the complaint nor the cross claim raises an allegation that its performance under the MSA violated Federal or State law, the indemnity provision is not triggered.  (Rec. Doc. 35-1 at 4-5).  Safety First's performance under the MSA, it points out, did not extend to more than quarterly inspections or otherwise require it to take up the responsibilities that a well structure owner assumes, such as ensuring that the Structure was lit at all times.  *Id*. at 5.  Cross Claimants concede that Burlington was the owner and operator of the Structure, Rec. Doc. 23 at 2, but contend that the indemnity provision is nonetheless triggered because 33 C.F.R. § 66.01-11 (2011) is binding on Safety First.

This Court finds Cross Claimants' reliance on § 66.01-11 unpersuasive.  § 66.01-11(a) provides for certain luminosity requirements for "light approved as a private aid to navigation."[7]

---

[7] Cross Claimants cite to § 66.01-11(a)(7), which requires each light to "[h]ave autonomy of at least 10 days if the light has a self-contained power system.  Power production for the prospective position should exceed the load during the worst average month of insolation.  The literature concerning the light must clearly state the operating limits and service intervals.  Low-voltage disconnects used to protect the battery must operate so as to prevent sporadic operation at night."

§ 66.01-11(b) requires "[t]he manufacturer of each light approved as a private aid to navigation [to] certify compliance by means of an indelible plate or label affixed to the aid that meets the requirements of § 66.01-14." Cross Claimants do not contest that Safety First's obligation under the MSA was to conduct quarterly inspections of the Structure. (Rec. Doc. 38-1 at 4). There is no evidence that suggests that Safety First was also assigned the duties of a well structure owner.[8] Therefore, the duty to keep the Structure lit at all times remained with Burlington as owner. (Rec. Doc. 23 at 2). Cross Claimants even concede that § 66.01-11 applies to the owner of a navigational aid. (Rec. Doc. 38 at 9). Finally, Cross Claimants allege that § 66.01-11(b) applies to Safety First as the manufacturer of the Structure's light without supporting evidence or even evidence that § 66.01-11(b) was violated. (Rec. Doc. 38 at 11). Consequently, § 66.01-11 does not trigger the indemnity provision of the MSA.

**C. Insurance Claim**

Section III, Articles 11.1.3 and 11.4 provide general liability insurance "to the extent of the liabilities assumed by [Safety First] under [the MSA] . . . ." (Rec. Doc. 35-5 at 16-17). All parties agree that the insurance policies under the MSA "are co-extensive with Safety First's contractual indemnity obligations," Rec. Doc. 38 at 14, meaning that the insurance provisions are triggered when the indemnity provisions are triggered. Because this Court has determined that the indemnity provisions are not triggered, it must hold that Cross Claimants are not entitled to the benefits of insurance under the MSA in this case.

---

[8] The general statutory duty to keep maritime structures, such as a wellhead, lit rests with the owner. *Seringe v. Cox Operating, L.L.C.*, No. 06-5861, 2008 WL 4003117, at *4 (E.D. La. Aug. 26, 2008) (compiling cases); *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 113 F. Supp. 2d 987, 1000 (E.D. La. 2000) (Wreck Act, 33 U.S.C. § 409, imposes duty on owner of sunken craft to mark wreck with lighted buoy); *Leda, Inc. v. Kilroy Co. of Tex., Inc.*, 598 F. Supp. 433, 436 (S.D. Tex. 1984) (owner's duty to keep well structure lit); *In re Texaco*, 570 F. Supp. 1272, 1283 (E.D. La. 1983) (owner's duty to keep well jackets lit).

### III. Conclusion

Accordingly,

IT IS ORDERED that Defendant Safety First's Motion for Partial Summary Judgment on Defense and Indemnity, Rec. Doc. 35, is GRANTED.

New Orleans, Louisiana, this 1st day of August, 2011.

　　　　　　　　　　　　　　　　　　　　　HELEN G. BERRIGAN
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE